**ESSO STANDARD OIL COMPANY (Puerto Rico), Plaintiff**

v.

**Carlos W. López FREYTES, President of the Puerto Rico Environmental Board, in his official capacity; Flor L. Del Valle López and Ángel Berríos Silvestre, Associate Members of the Puerto Rico Environmental Quality Board, in their official and personal capacities; and Norman Velázquez Torres, attorney for the Puerto Rico Environmental Quality Board, in his official and personal capacities, Defendants**

No. CIV. 03–2319(CCC).

United States District Court, D. Puerto Rico.

Nov. 7, 2006.

Lawrence P. Riff, Jason Levin, Steptoe & Johnson LLP, Los Angeles, CA, John F. Nevares, John F. Nevares & Assoc. PSC, San Juan, for plaintiff Esso Standard Oil Co. (Puerto Rico).

Eduardo A. Vera–Ramirez, Maria L. Santiago–Ramos, Luis A. Rodriguez–Munoz, Landron & Vera, San Juan, for the defendants.

## OPINION AND ORDER

ARENAS, Chief United States Magistrate Judge.

This matter is before the court on plaintiff Esso Standard Oil Company (Puerto Rico)'s (hereinafter "Esso") motion for summary judgment. (Docket No. 160, May 27, 2005.) Plaintiffs seek a declaratory judgment granting permanent injunction to end proceedings through which the Environmental Quality Board (hereinafter "EQB") seeks to prosecute a $75,960,000 fine against Esso.

After consideration of the factual and procedural posture of this case, the applicable law and for the reasons set forth below, Esso's motion for summary judgment will be GRANTED, accompanied by an order for permanent injunction.

## I. PROCEDURAL BACKGROUND

Esso filed this action against defendants Esteban Mujica Cotto,[1] Flor del Valle López, Ángel Berríos Silvestre and Norman Velázquez Torreson (hereinafter collectively "the defendants") on December 11, 2003,

---

1. Mr. Mujica Cotto was the president of the EQB at the time this suit was filed, but has since been replaced by Carlos W. López Freytes. Mr. López is therefore substituted in his official capacity as a defendant here.

pursuant to 42 U.S.C. § 1983. Esso sought declaratory relief and an injunction to remedy the constitutional injury to which it was subjected as a result of having to defend itself against the proposed imposition of a $75,960,000 fine before a severely biased administrative tribunal. (See Docket Nos. 1, 10 & 13.) The defendants are members and officials of the EQB, who proposed and seek to prosecute the fine in response to a gasoline spill which occurred in a single service station in Barranquitas, Puerto Rico. Esso contends that due to the several allegations of actual and structural bias within the EQB, their right to a fair and impartial tribunal, as protected by the Due Process Clause of the Fourteenth Amendment of the United States Constitution, has been violated, meriting federal intervention and protection.

On March 3, 2004, Esso filed a motion for preliminary injunction, which I denied in my opinion and order of July 28, 2004. The basis for my decision was that abstention was required under the principles of comity and federalism, as set forth in *Younger v. Harris,* 401 U.S. 37, 44, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), *cited in ESSO Standard Oil Co. (P.R.) v. Mujica Cotto,* 327 F.Supp.2d 110, 129 (D.P.R.), *aff'd,* 389 F.3d 212 (1st Cir.2004). I reasoned that the administrative proceedings had not yet concluded, the fine had not yet been imposed, and the EQB may yet have fairly adjudicated the case. I found for those reasons that Esso had failed to show irreparable harm. Further, I noted that there was the availability of recourse under the state judicial review process which could provide the necessary protections, in the event that Esso ultimately did receive an unfavorable decision before the EQB.

Esso appealed my decision (Docket No. 122), and on November 16, 2004, the First Circuit affirmed based on different reasoning. *See Esso Standard Oil Co. (P.R.) v. Mujica Cotto,* 389 F.3d 212, 213 (1st Cir. 2004). Although the First Circuit found that the overwhelming appearance of bias throughout the EQB proceedings, if they were to continue, fundamentally constituted a violation of due process, they agreed with my decision that Esso had failed to make a showing of irreparable harm. They concluded that Puerto Rico law allowed for the possibility of interlocutory review within the state system, that this availability ruled out a showing of irreparable harm, and that abstention was therefore required. *Id.* at 224–25.

Following the decision by the First Circuit, Esso followed the recommended course of action and sought interlocutory review within the Puerto Rico courts. (Docket No. 131–4, Ex. A.) The action was denied, on the basis that the court lacked jurisdiction to consider Esso's interlocutory appeal. (Docket No. 131–5, Ex. B, at 12.) The lack of irreparable harm as found and defined by the First Circuit was thereby obliterated.

Esso then filed a renewed motion for preliminary injunction with this court, which was unopposed by the defendants. I granted the motion on March 11, 2005, and included an order to show cause why the preliminary injunction should not be transformed into a permanent injunction. (Docket 148.) On April 27, 2005, I followed with another opinion and order (Docket No. 159.), finding that it was inappropriate at that time to convert the injunction from preliminary to permanent, due to the lack of "clear and unambiguous notice" to the defendants of my intention to do so. Further, due to the fact that only the plaintiffs had presented factual evidence at that time, I found it was appropriate to provide defendants with the opportunity to controvert Esso's allegations of bias. (*Id.* at 21.)

Following the abandonment of the show cause order, plaintiffs filed the instant motion for summary judgment on May 27, 2005, (Docket No. 160), seeking final declaratory and injunctive relief (hereinafter "the motion" or "plaintiff's motion"). Plaintiffs argue in the motion that no disputed issues of material fact exist and that they are therefore entitled to judgment as a matter of law. Defendants filed their response in opposition to plaintiff's motion (hereinafter "opposition brief") on December 30, 2005. (Docket No. 199.) The plaintiff's Reply to the Response in Opposition (hereinafter "Reply") was filed on January 17, 2006. (Docket No. 205.) The defense submitted the final brief on this matter, the Sur–Reply to the Reply to the Response in Opposition (hereinafter "Sur-reply") on February 11, 2006. (Docket No. 213.)

## II. FACTUAL BACKGROUND

In my July 28, 2004 opinion and order, after considering the evidence presented at the hearing held before me, I enumerated my detailed findings of fact. Therefore, I adopt the findings of fact of that opinion and order. *ESSO Standard Oil Co. (P.R.) v. Mujica Cotto*, 327 F.Supp.2d at 119–24.

## III. RULES OF LAW

In analyzing the present motion I must consider and apply the standards for Permanent Injunction and Summary Judgment.

### A. Permanent Injunction Standard

■ "Where a plaintiff seeks permanent injunctive relief, the test is the same [as for preliminary injunctive relief], except that 'the movant must show actual success on the merits of the claim, rather than a mere likelihood of success.'" *Caroline T. v. Hudson School Dist.*, 915 F.2d 752, 755 (1st Cir.1990) (quoting *K–Mart Corp. v.* *Oriental Plaza, Inc.*, 875 F.2d 907, [915] (1st Cir.1989)). "In order to issue a permanent injunction, a district court typically must find that (1) the plaintiff has demonstrated actual success on the merits of its claims; (2) the plaintiff would be irreparably injured in the absence of injunctive relief; (3) the harm to the plaintiff from defendant's conduct would exceed the harm to the defendant accruing from the issuance of an injunction; and (4) the public interest would not be adversely affected by an injunction." *United States v. Mass. Water Res. Auth.*, 256 F.3d 36, 51 n. 15 (1st Cir.2001) (citing *A.W. Chesterton Co. v. Chesterton*, 128 F.3d 1,5 (1st Cir.1997)).

### B. Summary Judgment Standard

#### 1. Federal Rule of Civil Procedure 56

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). To succeed on a motion for summary judgment, the moving party must show that there is an absence of evidence to support the nonmoving party's position. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has properly supported its motion, the burden shifts to the nonmoving party to set forth specific facts showing there is a genuine issue for trial and that a trier of fact could reasonably find in its favor. *Santiago–Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 52 (1st Cir.2000). The party opposing summary judgment must produce "specific facts, in suitable evidentiary form," to counter the evidence presented by the movant. *López–Carrasquillo v. Rubianes*, 230 F.3d 409, 413 (1st Cir.2000) (quoting *Morris v. Government Dev. Bank*

*of P.R.*, 27 F.3d 746, 748 (1st Cir.1994)). A party cannot discharge said burden by relying upon "conclusory allegations, improbable inferences, and unsupportable speculation." *Id.; see also Carroll v. Xerox Corp.*, 294 F.3d 231, 236–37 (1st Cir.2002) (quoting *J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc.*, 76 F.3d 1245, 1251 (1st Cir.1996)) (" 'neither conclusory allegations [nor] improbable inferences' are sufficient to defeat summary judgment.").

The court must view the facts in a light most hospitable to the nonmoving party, drawing all reasonable inferences in that party's favor. *See Patterson v. Patterson*, 306 F.3d 1156, 1157 (1st Cir.2002) (citing *Griggs–Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir.1990)). "In this context, 'genuine' means that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party; 'material' means that the fact is one 'that might affect the outcome of the suit under the governing law.' " *Burke v. Town of Walpole*, 405 F.3d 66, 75–76 (1st Cir.2005) (quoting *United States v. One Parcel of Real Prop.*, 960 F.2d 200, 204 (1st Cir. 1992)) ( [citing] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

### 2. Puerto Rico Local Rule 56

The Local Rules of the United States District Court for the District of Puerto Rico, Rule 56, which supplements the Federal Rule of Civil Procedure 56, imposes additional requirements on the party filing for summary judgment, as well as the party opposing the motion. Local Rule 56(a). As to the moving party, it is required that a separate short statement be filed with the motion, enumerating the material facts as to which the party contends no genuine issues of material fact exist, and each statement of fact must be supported by citation to the record. Local Rule 56(b). When filing a motion in opposition, the opposing party must include a separate short statement, admitting, denying or qualifying each fact set out by the moving party. Local Rule 56(c). Unless admitted, each statement must also be supported by citation to the record. *Id.* An opposing party may also include a section of additional facts, each of which must also be supported by citation to the record. *Id.* Finally, any reply to the motion in opposition must include a statement admitting, denying or qualifying any of the additional statements set out by the opposing party. Local Rule 56(d). Any statement of fact provided by any party which is not supported by citation to the record may be disregarded by the court, and any supported statement which is not properly controverted by the other party shall be deemed admitted. Local Rule 56(e).

If it is determined that there are no genuine issues of material fact, I will consider whether the four prongs of the permanent injunction test have been established by Esso, to determine whether plaintiffs are entitled to judgment as a matter of law.

### IV. ANALYSIS

Both of the parties complied with the requirements of Local Rule 56 to set forth statements of facts, and respond directly to each other's statements. The question of whether any genuine issue of material fact may best be determined by examining these statements of fact.

### A. Disputes of Material Fact

As the central issue complained of is the constitutional tort of a due process violation, the facts which are material to this case will affect, in some way, the plaintiff's ability to prove the alleged constitutional tort.

The transition from preliminary injunction to permanent injunction raises the bar as to the requirements for a showing of success, from a likelihood of success to actual success. However, when moving from preliminary to permanent injunction, the requirement for showing a constitutional tort does not shift from showing the appearance of bias, to proof of actual bias. The Supreme Court wrote that " 'justice must satisfy the appearance of justice,' *Offutt v. United States*, 348 U.S. 11, 14, 75 S.Ct. 11, 99 L.Ed. 11 (1954), and this 'stringent rule may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties,' *In re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed. 942 (1955)." *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 243, 100 S.Ct. 1610, 64 L.Ed.2d 182 (1980). If the proceedings to which Esso is being subjected fail to meet this stringent rule, then a constitutional tort is established.

If the sum of undisputed facts before this court show that there is either actual bias or the appearance thereof, than I must find that Esso is entitled to the protection of this court against the otherwise inevitable constitutional tort which would result from being tried before a tribunal which fails to maintain the appearance of impartiality.

### B. Statements of Fact

The arguments presented by Plaintiff to support a finding that the EQB is incompetent to adjudicate their case due to a lack of impartiality are divided into four categories, as follows: (1) The Show Cause Order, (2) The Environmental Quality Board, (3) The Hearing Examiners and (4) The Senate Committee Report.

### 1. The Show Cause Order

The facts presented in plaintiff's statement of undisputed material fact (Docket No. 160–2.) which pertain to the Order to Do and Show Cause (Docket No. 160–4, Ex. 4) (hereinafter "Show Cause Order") (issued in relation to *In re Esso Standard Oil Company (P.R.),* Case No. OA–99–TE–102, by the Environmental Quality Board), are admitted by the defense. However, in the defense's opposing statement of disputed material, the additional fact is provided, that the amount of the fine as proposed in the Show Cause Order is not final. Further, the defense cites a case in which a fine for an even larger amount was proposed, but where the fine was later settled for the amount of $4.6 million. In the plaintiff's response to additional facts, it is contended that the existence of another enormous proposed fine does not create a genuine issue of material fact as to the facts upon which plaintiff base their motion.

The additional fact presented by the defense suggests that the proposed fine against Esso is not necessarily out of the ordinary, and that it is therefore not indicative of any form of bias toward Esso. It may, in some sense be reassuring that this is not the first time such a large fine was proposed by the EQB, and that the fine settled upon may not ultimately remain so high. However, I do not consider this particularly relevant in determining whether the EQB exercised bias in determining the amount for this proposed fine. The information regarding the past case is also irrelevant to this, as there is no basis for concluding that the EQB necessarily served as an impartial tribunal in the cited case.

Plaintiff's response to the defense's additional facts also makes reference to this court's earlier decision that the pendency of a final adjudication is not relevant to the

cause of action now before it. This court has already determined, in accordance with the First Circuit, *Esso Standard Oil Co. (P.R.) v. Mujica Cotto,* 389 F.3d at 221, that merely being forced to defend oneself in a proceeding before a biased administrative agency is enough to constitute an ongoing injury. (Docket No. 148, at 6–7.) Therefore, neither the pendency of a final imposition of the fine against Esso, nor the suggestion that this is not the first preposterous fine suggested by the EQB presents this court with a genuine issue of material fact.

2. The Environmental Quality Board

The next set of facts provided by plaintiff's statement of undisputed material facts pertain to the appearance of bias emanating from the mere statutory structure of the EQB. I address the enumerated facts, as well as the defense's responses.

Plaintiffs provide that P.R. Laws Ann. tit. 12, § 1129(a) establishes the EQB as a three-member governing board, supported by various other divisions and staff. Further, P.R. Laws Ann. tit. 12, § 1131 charges the EQB with various administrative functions related to the protection of Puerto Rico's existing environmental laws, as well as the adoption of regulations to protect the environment and enforce Puerto Rico's environmental statutes and regulations.

In pursuance of these goals, the EQB is purportedly authorized by P.R. Laws Ann. tit. 12, § 1136(c) to impose sanctions and administrative fines in response to violations of environmental statutes, as well as orders, rules and regulations emanating from the board itself. A further option at the board's disposal, pursuant to P.R. Laws Ann. tit. 12, § 1131(22) is the issuance of "to do" orders, requiring violators to perform in some prescribed manner to further the Commonwealth's environmental laws.

Plaintiff's statement of undisputed material facts next provides that the funds which the EQB collects through the imposition of fines and other sanctions "shall be deposited in the Special Account in favor of the [EQB]," P.R. Laws Ann. tit. 12, § 1136(f),(k), as amended. Once in the Special Account, those funds are at the disposal of the EQB, through disbursements authorized or signed by the president of the board, and the EQB will have broad discretion in how those monies are spent. (Docket No. 160–8, Ex. E., at 6, ¶¶ B 7 C); *see* P.R. Laws Ann. tit. 12, § 1131(16)(A).

The defense states that if opposition is required, than plaintiff's presentation of the facts is denied, as the paraphrasing of referenced statutes is "misleading and incomplete." Defense's opposing statement of disputed material fails to supplement the information submitted by Esso, or specify any omitted language from the statutes which would aid in clarifying the manner in which plaintiff's paraphrased statements are misleading.

The defense does go on to provide a number of additional facts which pertain to the statutory set-up of the EQB. The first claim, addressed in the defense's opposing statement of disputed material, Additional Fact No. 2, is that the EQB members do not gain financially from the imposition of administrative fines, because their salaries are assigned by the Governor of Puerto Rico, and are statutorily fixed. (Docket No. 200, at 7, ¶ 2.) This fact, as presented, carries the implication that a fixed salary undermines the possibility of any pecuniary interest on the part of the salaried adjudicator. Plaintiff's response to additional facts responds by pointing out that the defense seems to be barking up a tree which was already cut down by the First

Circuit, when they made it clear that "a pecuniary interest need not be personal [in order] to compromise an adjudicator's neutrality." *Esso Standard Oil Co. (P.R.) v. Mujica Cotto*, 389 F.3d at 219 (citing *United Church of the Med. Ctr. v. Med. Ctr. Comm'n*, 689 F.2d 693, 699 (7th Cir.1982)).

I am not convinced that a fixed salary undermines any possibility of pecuniary interest on the part of the adjudicator. In *Ward v. Village of Monroeville, Ohio*, 409 U.S. 57, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972), for example, the Supreme Court found that the mayor's court was invalid, as it produced revenues for the town over which the mayor presided. The Court found that in spite of the fact that the mayor's salary was not augmented by the sums collected, "the mayor's executive responsibilities for village finances may make him partisan to maintain the high level of contribution from the mayor's court." *Id.* at 60, 93 S.Ct. 80.

At issue, rather, is whether the EQB's proceedings present a situation "which would offer a possible temptation to the average man . . . ." *Id.* (quoting *Tumey v. Ohio*, 273 U.S. 510, 532, 47 S.Ct. 437, 71 L.Ed. 749 (1927)). The nature of the EQB creates a "situation in which an official perforce occupies two practically and seriously inconsistent positions, one partisan and the other judicial [and] necessarily involves a lack of due process of law . . . ." *Id.* (quoting *Tumey v. Ohio*, 273 U.S. at 534, 47 S.Ct. 437).

There is no reason to assume that the fixed salaries of the board members preclude their bias in adjudicating fines. Much like the mayor in *Ward*, the board is likely to be tempted by their power to fill the coffers of the EQB, for a large array of reasons. For example, board members, recognizing that projects undertaken by the EQB require funding, could be influenced to inflate the size of fines imposed,

for the purpose of furthering the works of the EQB. "[T]he adjudicative body stands to benefit financially from the proceeding because any fine imposed will flow directly to the EQB's budget." *Esso Standard Oil Co. (P.R.) v. Cotto Mujica*, 389 F.3d at 218–19. These circumstances clearly present the type of "possible temptation to the average man" which was noted in *Tumey v. Ohio*, 273 U.S. at 532, 47 S.Ct. 437.

The final fact presented by plaintiff's statement of undisputed material fact regarding the EQB is that the proposed fine against Esso, $75,960,000, (Docket No. 160–2, at 1, ¶ 1), is more than the EQB's combined 2004 and 2005 budgets ($30,042,-000 and $39,488,000 respectively). (*Id.* at 3, ¶ 10.) This is admitted by the defense. (Docket No. 200–1, at 2, ¶ 1.) However, in an attempt to undermine the material value of the fact, the defense provides additional facts 8–10. (*Id.* at 8–9.) These facts address the matter of the EQB's Special Account funding, and claim that historically, money collected from the issuance of permits, non-commercial licenses, and other such sources has made up a greater amount of money than has been collected through fines. This argument neither meets plaintiff's argument for structural infirmity of the EQB, nor does it change the fact that the currently proposed fine is well over twice the EQB's annual budget. Defendant's claim in no way undermines, or even impacts the matter of whether this court can view the EQB as an impartial tribunal in its proceedings against Esso.

### 3. The Hearing Examiner

Plaintiff's statement of undisputed material fact next moves to the facts surrounding the alleged bias on the part of the hearing examiner presiding over Esso's case before the EQB.

Plaintiff's statement of undisputed material fact sets forth that the hearing examiners "are charged with presiding over administrative hearings regarding proposed orders like the one at issue in this case, determining whether cause exists to levy proposed fines and making a recommendation to the Board." (Docket No. 160–2, at 4, ¶ 12, citing Rules 4 & 22.2, Rules of Administrative Procedure for Hearings in the Environmental Quality Board of Puerto Rico, which is attached to Docket 160 as Exhibit F.) The recommendation of the hearing examiner is reviewed by the Governing Board of the EQB, who retains the ultimate authority as to whether the fine should be imposed. (*Id.* at 13.)

Defense's opposing statement of disputed material again declines to admit or deny these statements, as they arise from statutory language, but, again states that if opposition is necessary, then the statements are denied, for their misleading and incomplete character. No further explanation is provided as to how the statements are misleading or incomplete. Plaintiff's statements of fact not having been properly controverted, they are hereby deemed admitted, pursuant to Local Rule 56(e).

The manner in which hearing examiners receive assignments, and well as the pay structure, are the next issues of fact. Plaintiff's statement of undisputed material fact claims that hearing examiners are hired on a case-by-case basis, are paid by the hour, may be dismissed without cause, and are assigned to preside over specific cases at the discretion of the EQB, citing each fact to the Legal Services Contract between the EQB and Yolanda Torres Roque. (Docket No. 160–10, Ex. G.) It is also purported that pursuant to that contract, the hearing examiner owes the EQB a "duty of complete loyalty." [2] (Docket No. 160–2, at 4, ¶ 16, citing Docket No. 160–10, Ex. G, at 5.) Finally, plaintiff quotes Mr. Morales's testimony for the fact that hearing examiners are paid out of the very same Special Account into which the proceeds of fines collected by the EQB are deposited. (*Id.* at 4, ¶ 14, citing Morales Testimony, Preliminary Injunction Hearing Tr. at 124:3–12.)

The defense denies each of the purportedly undisputed facts, but based on various grounds, so I will address each separately. First, the defense states that hearing examiners are not hired on a case-by-case basis, but sign a one-year contract for employment. (Docket No. 200–1, at 4–5, ¶ 14.) It is also claimed that hearing examiners are not paid by the hour, but that the one-year contract includes a clause which "establishes a fixed rate." (*Id.* at 5, ¶ 14.) The argument the defense presses is that the rate is fixed, as well as the maximum number of hours [3] which a hearing examiner is permitted to work per month and per year while under the contract. As additional fact, the defense states that the hearing examiners do not gain financially from the imposition of fines, and that their salaries do not depend on

---

**2.** This argument has been argued at length between the parties. The statement of undisputed material fact presents a "loyalty clause" to the court. (Docket No. 160–2, at 4, ¶ 16.) The defense admits that the clause exists, but claims that it is an appropriate clause intended to prevent hearing examiners from representing a client in front of the EQB, or from bringing a personal suit against the EQB while employed by same. Plaintiff's response to additional facts does concede that the loyalty clause may not be offensive. The meaning of this clause, however, is irrelevant, in light of the various other factors discussed as to the probability of hearing examiners' pecuniary interest in recommending fines.

**3.** This argument seems to directly contradict defense's claim that hearing examiners are not paid by the hour.

whether they recommend the imposition of fines. (Docket No. 200–1, at 7, ¶ 3.)

Plaintiff responds to these additional facts with the same argument used to counter the defense's additional fact regarding the EQB board members. That is, the First Circuit has already determined that "a pecuniary interest need not be personal to compromise an adjudicator's neutrality." *Esso Standard Oil Co. (P.R.) v. Cotto Mujica*, 389 F.3d at 219. Although I found that this argument was well applied as to the EQB board members, I find it less relevant as to the hearing examiners, for the following reasons.

The defense denies plaintiff's statement that cases are assigned to the hearing examiners at the discretion of the board. (Docket No. 200–1, at 5, ¶ 15.) It is admitted, however, that "among the various professional duties of the hearing examiners they have to preside over every administrative investigative proceeding, quasi judicial proceeding and/or legislative proceeding or regulation that is entrusted to them by President of the EQB and/or the governing board of the EQB." (*Id.*) The admitted statement in the defense's opposing statement of disputed material confirms the fact as put forth by plaintiff, causing some question as to why the defense would deny the same statement. Regardless of the defense's intent in denying plaintiff's statement of fact, I find no dispute of the issue in this matter, and that the EQB may assign work to hearing examiners at their discretion.

Referring back to the defense's argument that the hearing examiner contracts have a set number of hours, or a set amount of monies which may be collected during the contract, some issues remain for examination. The defense fails to make note of any minimum number of hours which hearing examiners may expect to work and for which they will be compensated. One inference to be drawn from this sum of facts is that there is a probability that hearing examiners will conclude that, if in the favor of the board, they may receive more work, and therefore come closer to earning the maximum permitted amount of income.

For this reason, as well as the fact that hearing examiners are paid out of the same fund into which the collected fines are deposited,[4] I find that there is a clear implication of structural bias. Further, the pecuniary interest, in any event given support by the decision of the First Circuit,. is most accurately viewed as an actual and personal pecuniary interest in the imposition of fines, on the part of the hearing examiners.

4. Partial Report of the Senate Commission

Plaintiff describes the investigation into the gas spill at La Vega Ward, conducted by the Puerto Rico Senate Commission on Agriculture, Natural Resources, and Energy (hereinafter "Senate Commission"), commencing in October 18, 2001. (Docket 160–2, at 5, ¶ 17.) The Puerto Rico Senate Commission on Government Integrity re-

---

**4.** One clause found in Ms. Roque's contract has a particularly offensive appearance, as to the administration of due process. "[Hearing Examiner] expressly acknowledges that in the eventuality of there not existing or being assigned funds for the payment of contracted services the contract shall be deemed rescinded without any further right to collect." (Docket No. 160–10, at 6, ¶ 12.) According to testimony of Mr. Morales, the funds which are assigned as the source of payment for hearing examiners come from the very same Special Account into which the collected fines imposed by the EQB are deposited. This clause presents hearing examiners with the stark reality that if the Special Account runs low, their very jobs may be effectively terminated.

vived a dormant investigation into corruption of the EQB shortly thereafter, and the two Commissions conducted joint hearings. (*Id.* ¶¶ 17 & 18.) A report was released by the Commissions on July 10, 2003, entitled "Partial Report on S.R. 1047" (hereinafter "the Report"). (Docket No. 223, Ex. H.)

Plaintiff's further statements as to the report appear as follows:

19. The Report makes factual findings about the Station and concludes that Esso violated various environmental laws. Id.

20. The Report criticizes EQB by asserting that "the environmental authorities in Puerto Rico ignored the residents' complaints," and that EQB "acted, if it indeed acted, with extreme neglect, inefficiency, and lack of compliance with its legal mandate." Report, at 11[, ¶¶ 1 & 2]. The Report further states that "it would appear that Esso was the owner of the EQB's regulations and decided when to apply [them,]" and that "EQB has begun to take action, but it does so timidly and subject to the desires and actions of Esso Standard Oil Co." Id. [¶¶ at 1 & 3].

21. The Report calls for a revision of Puerto Rico's environmental laws to permit petroleum spills to be charged as felonies, and it recommends that "the fines imposed should be sufficiently high as to dissuade any potential violator." Id. at 13[, ¶ 2].

22. The Report also directs the Commission on Government Integrity to "identify those public officials who permitted the slowness with which the gasoline spill was dealt with in the La Vega ward of Barranquitas and refer them to both the Department of Justice as well as to the Office of Government Ethics to determine whether any crime was committed or violation of the laws and regulations of the Commonwealth of Puerto Rico." Id. at 14[, ¶ 7].

(Docket No. 160, at 5–6, ¶¶ 19–22; Docket No. 223, Ex. H.)

Defendant's opposing statement of disputed material admits that the Report was issued by the Senate Commission, but denies that the Report "influenced in any way, shape or form the minds of the hearing examiners upon its issuance." (Docket No. 200–1, at 6, ¶ 17–22.) Defendants go on to provide an additional fact, indicating the lack of any investigation into the EQB by the Puerto Rico Department of Justice. (*Id.* at 9, ¶ 11.)

The defense's additional facts provided plaintiff with the opportunity to restate the position that the mere issuance of the Report, prior to the conclusion of the proceedings against Esso, constituted an "improper intrusion into the adjudicatory process . . . ." (Docket No. 205, at 12–13, ¶ 11) (quoting *Pillsbury Co. v. FTC*, 354 F.2d 952, 963–64 (5th Cir.1966)) (citing *In re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed. 942 [1955] ).

In order to assess the defendant's ability to create a genuine issue of material fact through this denial, it must first be settled whether the existence of pressure from a legislative body on an adjudicative body is sufficient for a finding of impermissible interference with the due process of law, or whether an actual submission to that pressure must first be shown.

Plaintiff argues that the defendant's statement is irrelevant and fails to create a genuine issue of material fact, because when regarding impermissible pressures on a judicial or quasi-judicial body, it is not only the actual influence of the pressure which is impermissible, but also the appearance of it. Plaintiff's memorandum in

support of motion for summary judgment notes:

> A legislative body's "improper intrusion into the adjudicatory processes" of an administrative agency sacrifices "the right of private litigants to a fair trial and, equally important ... their right to the appearance of impartiality, which cannot be maintained unless those who exercise the judicial function are free from powerful external influences." *Pillsbury Co. v. FTC,* 354 F.2d 952, 963–64 (5th Cir.1996) (citing, inter alia, In re Murchison, 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed. 942 (1955)). Legislative interference "so tainting the administrative process violates the right of a party to due process of law." *ATX, Inc. v. United States Dep't of Transp.,* 41 F.3d 1522, 1527 (D.C.Cir.1994). It is difficult to imagine a more serious corruption of the agency adjudicative process by the legislature than here, where the Puerto Rico Senate Commissions prejudged the facts of a specific case and threatened criminal prosecution of the agency officials responsible for the case. See Pillsbury, 354 F.2d at 964 ("To subject an administrator to a searching examination as to how and why he reached his decision in a case still pending before him, and to criticize him for reaching the 'wrong' decision, ... sacrifices the appearance of impartiality—the sine qua non of American judicial justice ...")[.]

(Docket No. 160–3, at 15, ¶ 1.)

In sum, "[w]ith regard to judicial decisionmaking, whether by court or agency, the appearance of bias or pressure may be no less objectionable than the reality." *D.C. Fed'n of Civic Ass'ns v. Volpe,* 459 F.2d 1231, 1246–47 (D.C.Cir.1972). The issuance of the Report by the Senate Committee during the ongoing proceedings against Esso presents an impermissible appearance of legislative pressure on the adjudicative process. I therefore find sufficient basis from the Report itself to deem the EQB incompetent to serve as an impartial tribunal in the case against Esso.

### 5. No Material Facts in Dispute

It is well established that a party opposing summary judgment can not create issues of material fact simply by denying everything. The non-movant has the burden to demonstrate that a trialworthy issue exists with competent evidence. *See Navarro v. Pfizer Corp.,* 261 F.3d 90, 93 (1st Cir.2001); *Nat'l Amusements, Inc. v. Town of Dedham,* 43 F.3d 731, 735 (1st Cir.1995). "Even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Muñoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990) (citing *Rossy v. Roche Prod., Inc.,* 880 F.2d 621, 624 (1st Cir.1989); *Oliver v. Digital Equip. Corp.,* 846 F.2d 103, 109–10 (1st Cir.1988)). Rather, the party opposing a motion for summary judgment must set forth specific evidence which demonstrates the existence of a genuine issue of material fact, and "a genuine issue of material fact does not spring into being simply because a litigant claims that one exists." *Griggs–Ryan v. Smith,* 904 F.2d 112, 115 (1st Cir.1990).

The defense has failed to create any genuine issue of material facts as to the appearance of a biased adjudicative process. Each attempt on the part of the EQB to create a dispute of material fact was unsuccessful. Esso is thus entitled to judgment as a matter of law, under the summary judgment standard. I therefore consider whether plaintiffs have met the requirements of the permanent injunction.

C. Meeting of the Permanent Injunction Test

In order to merit the grant of a permanent injunction, Esso must meet the following four elements: (1) a showing of actual success on the merits; (2) that Esso would be irreparably injured in the absence of injunctive relief; (3) that the harm to Esso from defendant's conduct would exceed the harm to the defendant accruing from the issuance of an injunction; and (4) that the public interest would not be adversely affected by an injunction.

As the last three prongs of this test have already been addressed, I will address them briefly before discussing the crucial element at this stage, whether Esso has made a showing of actual success on the merits.

The First Circuit held that the possibility of interlocutory review was the only factor precluding a finding of irreparable harm. Esso has since sought interlocutory review and demonstrated to this court that such a mechanism for protection is not available. I decided in granting the preliminary injunction that there would be irreparable harm to Esso if the injunction were not granted.

The balancing of harms prong was also addressed. Although the EQB will be affected, the injunction will be directed only at the penalty phase of the proceedings, and will not infringe on the EQB's ability to enforce the remediation plan for cleaning and protecting the spill site. Therefore, "the constitutional infringement clearly outweighs any hardship the EQB might sustain in that respect." (Docket No. 148, at 14, ¶ 1.) With respect to the effect on public policy, I found that the same logic applied; the EQB will continue to have power to discharge its ministerial responsibilities, and the injunction will be limited to the specific circumstances of this case. Therefore, any effect on the public interest is outweighed by the finding of a serious constitutional depravation which is presented by the particular facts of this case. I find that the rationale used in evaluating these two prongs as to the preliminary injunction applies equally to the granting of the requested permanent injunction. Esso has met three out of the four required elements for permanent injunction.

The fourth and final element of whether Esso has made a showing of actual success on the merits. I found in my order on March 11, 2005 that there was an overwhelming likelihood of success on the merits. That order was made, however, in the context of an unopposed motion for preliminary injunction, and I have therefore provided sufficient time for the EQB to present evidence to counter the finding that there is the overwhelming appearance of bias at several levels of the adjudicative process against Esso. Although the defense attempted to create genuine issues of material fact, I find that there are none, and thus consider whether the undisputed facts reflect actual success on the merits, as to Esso's claim.

The question to be answered is whether, based on the facts before this court, the adjudicatory process within the EQB has undermined Esso's constitutional right to be tried before a "neutral and detached judge in the first instance." *Ward v. Village of Monroeville, Ohio*, 409 U.S. at 62, 93 S.Ct. 80.

> [O]ne of the pillars of due process is ... the presence of an impartial and disinterested tribunal. *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242, 100 S.Ct. 1610, 64 L.Ed.2d 182 (1980). This requirement of neutrality in adjudicative proceedings safeguards the two central concerns of procedural due process, the prevention of unjustified or mistaken deprivations and the promotion of partic-

ipation and dialogue by affected individuals in the decisionmaking process. *See Carey v. Piphus*, 435 U.S. 247, 259–262, 266–267, 98 S.Ct. 1042, 1043, 1050–1052, 1053, 1054, 55 L.Ed.2d 252 (1978). The neutrality requirement helps to guarantee that life, liberty, or property will not be taken on the basis of an erroneous or distorted conception of the facts or the law. *See Mathews v. Eldridge*, 424 U.S. 319, 344, 96 S.Ct. 893, 907, 47 L.Ed.2d 18 (1976). At the same time, it preserves both the appearance and reality of fairness, "generating the feeling, so important to a popular government, that justice has been done," *Joint Anti–Fascist Committee v. McGrath*, 341 U.S. 123, 172, 71 S.Ct. 624, 649, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring), by ensuring that no person will be deprived of his interests in the absence of a proceeding in which he may present his case with assurance that the arbiter is not predisposed to find against him. *Id.* "A fair trial in a fair tribunal is a basic requirement of due process." *In re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed. 942 (1955).

*ESSO Standard Oil, Co. v. Mujica Cotto*, 327 F.Supp.2d at 130.

■ "[S]ubmission to a fatally biased decisionmaking process is in itself a constitutional injury," *Esso Standard Oil Co. (P.R.) v. Mujica Cotto*, 389 F.3d at 219 (quoting *United Church of the Med. Ctr. v. Med. Ctr. Comm'n*, 689 F.2d at 701), and the evidence before me shows impermissible bias or appearance of bias at all levels of the adjudicatory process at the EQB. Therefore, I find that Esso has achieved success on the merits, showing that there is a clear violation of their due process right to a fair and impartial trial.

The appearance of bias is so strong in the record before this court, that a constitutional tort would be committed if the EQB were allowed to continue with the proceedings against Esso. The Supreme Court described in *Withrow v. Larkin*, 421 U.S. 35, 54, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975), that the combination of investigative and adjudicative functions within an agency is not determinative of a due process violation, in and of itself. However, the Court also noted that its finding should not "preclude a court from determining from the special facts and circumstances present in the case before it that the risk of unfairness is intolerably high." *Id.* at 58. I find such a case here. Even without further proof of actual bias against Esso, a constitutional tort has been committed, and would be continued as long as the proceedings against Esso were permitted to go forward before the current formation of the EQB.

## V. CONCLUSION

In light of the failure of the EQB to raise any genuine issues of material fact, Esso is entitled to judgment as a matter of law. Esso's motion for summary judgment is hereby GRANTED. A permanent injunction will issue separately in favor of plaintiff and against all defendants. The Clerk will enter judgment accordingly.