Herbert W. BROWN III,
et al., Plaintiffs

v.

COLEGIO DE ABOGADOS
DE PUERTO RICO,
Defendant.

Civil No. 06–1645 (JP).

United States District Court,
D. Puerto Rico.

Sept. 26, 2008.

Ada Sofía Esteves, Esq., David C. Indiano–Vicic, Esq., Indiano & Williams, PSC, Andrés W. López, Esq., Andrés W. López Law Office, San Juan, PR, for Plaintiffs.

Harold D. Vicente–González, Esq., Nelson N. Córdova–Morales, Esq., Vicente & Cuebas, San Juan, PR, for Defendant.

1. An "integrated bar" association is a bar association in which membership is statutorily required of attorneys in order to practice

## OPINION AND ORDER

JAIME PIERAS, JR., Senior District Judge.

Before the Court is Plaintiffs Herbert W. Brown, III, José L. Ubarri, and David W. Román's (collectively, "Plaintiffs") motion for summary judgment (Nos. 13 and 14) and Defendant Colegio de Abogados (the "Colegio") opposition thereto (No. 70), as well as Plaintiffs' reply brief (No. 73). Plaintiffs filed this action pursuant to 42 U.S.C. § 1983 ("Section 1983") for violations of their rights under the First, Fifth, and Fourteenth Amendments of United States Constitution. Plaintiffs allege that the Colegio, an integrated bar association [1] in Puerto Rico, used approximately forty percent of each attorney's annual dues to purchase a compulsory life insurance policy. Plaintiffs argue that this expenditure was not germane to the purposes justifying an integrated bar association. Plaintiffs now move the Court for summary judgment, arguing that the Colegio is barred by the doctrine of non-mutual collateral estoppel from re-litigating the constitutionality of its compulsory life insurance policy since an earlier decision by this Court found the policy to be unconstitutional. For the reasons stated herein, Plaintiffs' motion for summary judgment (**Nos. 13 and 14**) is hereby **GRANTED.**

## I. *MATERIAL FACTS NOT IN GENUINE ISSUE OR DISPUTE*

The following facts are deemed uncontested by the Court because they were included in the motion for summary judgment and opposition and were agreed upon, or they were properly supported by

law in a particular jurisdiction. *See* Black's Law Dictionary 158 (8th ed. 2004).

evidence and not genuinely opposed.[2]

1. Since the Colegio is an integrated bar association, all members of the plaintiff class are required to be members of the Colegio as a precondition to practicing law in the Commonwealth of Puerto Rico.

2. Member of the Colegio are required to pay annual dues in the amount of $200.00.

3. A portion of the annual dues charged by the Colegio is used to pay for a compulsory life insurance plan.

4. For the year 2006, the compulsory life insurance plan cost each attorney $78.00 of his or her $200.00 annual dues—almost forty percent of the total dues.

5. In 1994, Carlos A. Romero, Jr. ("Romero") brought suit in the United States District Court for the District of Puerto Rico asserting, *inter alia,* that the Colegio's mandatory life insurance program is not germane to the purposes that justify an integrated bar association.

6. On February 25, 1999, the United States District Court for the District of Puerto Rico granted summary judgment in the Colegio's favor.

7. Romero appealed the grant of summary judgment to the United States Court of Appeals for the First Circuit, and the First Circuit reversed and remanded the case back to the District Court, with instructions to certify a question to the Puerto Rico Supreme Court.

8. On remand from the United States Court of Appeals for the First Circuit, the District Court certified the following question to the Puerto Rico Supreme Court: "Is the Colegio de Abogados de Puerto Rico authorized to compel members to purchase life insurance coverage through the Colegio as a condition of membership in the bar of Puerto Rico?"

9. The Supreme Court of Puerto Rico answered the certified question in the affirmative, stating that the Colegio is authorized, pursuant to Puerto Rico law, to compel its members to pay for life insurance from their annual dues.

10. The Supreme Court of Puerto Rico, however, did not address Romero's arguments pursuant to the United States Constitution regarding the Colegio's mandatory life insurance plan.

11. On October 9, 2002, after eight years of litigation, the United States District Court (J. Saris, sitting by designation), issued a Memorandum and Order concluding that " . . . the mandatory life insurance plan is not germane [to the purposes of the Colegio], and that Romero may not be forced to pay for it through his membership dues."

12. The District Court granted Romero a permanent injunction against the Colegio prohibiting the Colegio from collecting "that portion of [Romero's] annual dues attributable to the Colegio's mandatory group life insurance program."

13. The District Court also awarded Romero damages as a result of the Colegio's unconstitutional taking of his money to pay for the compulsory life

---

**2.** Rule 56 of the Local Rules of the United States District Court for the District of Puerto Rico requires an opposition to a motion for summary judgment to be accompanied by an opposing statement of material facts which admit, deny, or qualify the facts provided by the moving party. Failure to do so results in the admission of the properly-supported facts submitted by the moving party. The Colegio has not complied with Local Rule 56. As such, Plaintiffs' properly-supported proposed uncontested facts shall be deemed admitted.

insurance policy, as well as interest and attorneys' fees.

14. The Colegio sought to appeal the District Court's judgment, but later voluntarily dismissed the appeal before it reached the briefing stage.

15. The Colegio was aware of the District Court's October 9, 2002, Memorandum and Order and ensuing Judgment in the Romero case upon notification, since it was a party to that litigation.

16. The Colegio did not specifically notify its membership of the District Court's ruling and of the unconstitutionality of its compulsory life insurance program, however the decision was mentioned in the Treasurer's Report for the years 2003 and 2004.

17. On November 30, 2005, a group of five attorneys wrote a letter to the Colegio, through its President Julio Fontanet, Esq., directing the Colegio to stop charging them that portion of their annual dues attributable to the mandatory life insurance program.

18. On February 2, 2006, the Colegio sent a letter in response stating that it would return to each of the five attorneys the $78.00 used for the purchase of compulsory life insurance, under three "conditions":

(a) The authorization was for the current year (2006), because the Colegio's Board supposedly could not bind the new Board that would take office in September 2006. As a result, the Colegio stated, the attorneys would be forced to make additional requests come dues-paying time for the 2007 fiscal year and every year thereafter;

(b) The Colegio's action supposedly could not be deemed as a precedent for future cases;

(c) The premium for the compulsory life insurance in 2006 was $78.00, and could change the following year.

19. On February 23, 2006, the group of five attorneys wrote the Colegio and rejected each and every one of the preconditions that the Colegio wished to impose upon them before it returned to each of them the $78.00 used for the purchase of compulsory life insurance.

20. On February 27, 2006, a second group of eight attorneys wrote a letter to the Colegio requesting the return of the portion of their dues attributable to the purchase of compulsory life insurance, and directing the Colegio to stop charging them that portion based on the Romero decision.

21. On March 3, 2006, the Colegio sent out letters to the attorneys in the first group of five attorneys, along with individual checks for $78.00 each.

22. The group of eight attorneys were reimbursed with the unearned premium of their coverage in the life insurance program for the year 2006 after the matter was submitted by the Colegio to the Review Board.

23. On April 20, 2006, the Colegio wrote a letter to the group of eight attorneys, informing them that it had filed a petition before a state-based "Review Board," which named the attorneys that composed the group of eight (along with six others) in the caption. As to these attorneys, the Colegio asked the Review Board to advise whether the Colegio, instead of returning the compulsory insurance premium, could provide the attorneys with vouchers to be used in Colegio seminars, to purchase Colegio-issued books or materials, or to enroll the

attorneys in the Colegio's optional health or disability insurance plans.

24. Membership dues for attorneys who are seventy-five years or older and have been admitted to practice law in Puerto Rico for twenty-five years or more are reduced by fifty percent.

25. Dues for the Colegio's members must be paid by January 31 of each year.

26. Plaintiffs never filed an objection before the Colegio regarding their participation in the life insurance program nor did they ask to be reimbursed with the portion of their annual membership dues destined to fund their coverage in the life insurance program.

27. On October 14, 2006, the Colegio's new Governing Board ratified the agreement taken by the previous Board to cancel the life insurance program paid with a portion of the annual membership dues starting from December 31, 2006.

28. Since the discontinuance of the life insurance program offered by the Colegio in 2006, no portion of the annual membership dues paid by its members has been used to pay for such a program.

## II. *LEGAL STANDARD FOR A MOTION FOR SUMMARY JUDGMENT*

Summary judgment serves to assess the proof to determine if there is a genuine need for trial. *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir.1990). Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when "the record, including the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, viewed in the light most favorable to the nonmoving party, reveals no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Zambrana–Marrero v. Suárez–Cruz*, 172 F.3d 122, 125 (1st Cir.1999) (stating that summary judgment is appropriate when, after evaluating the record in the light most favorable to the non-moving party, the evidence "fails to yield a trial worthy issue as to some material fact"); *Goldman v. First Nat'l Bank of Boston*, 985 F.2d 1113, 1116 (1st Cir.1993); *Canal Ins. Co. v. Benner*, 980 F.2d 23, 25 (1st Cir.1992). The Supreme Court has stated that "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In this way, a fact is material if, based on the substantive law at issue, it might affect the outcome of the case. *See Mack v. Great Atl. and Pac. Tea Co., Inc.*, 871 F.2d 179, 181 (1st Cir.1989).

On a summary judgment motion, the movant bears the burden of "informing the district court of the basis for its motion and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once the movant meets this burden, the burden shifts to the opposing party who may not rest upon mere allegations or denials of the pleadings, but must affirmatively show, through the filing of supporting affidavits or otherwise, that there is a genuine issue of material fact for trial. *See Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553; *Goldman*, 985 F.2d at 1116.

## III. *ANALYSIS*

Plaintiffs move for summary judgment, arguing that the doctrine of non-mutual collateral estoppel bars the Colegio from re-litigating the constitutionality of its compulsory life insurance program after the Romero decision was entered. The Court will now consider Plaintiffs' arguments.

### A. *Non–Mutual Offensive Collateral Estoppel*

■■■ When a plaintiff implores a federal court to give preclusive effect to a prior federal court adjudication, federal law governs. *Faigin v. Kelly*, 184 F.3d 67, 78 (1st Cir.1999). The doctrine of collateral estoppel bars re-litigation of any factual or legal issue that was actually decided in previous litigation "between the parties, whether on the same or a different claim." *Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 30 (1st Cir.1994), quoting Restatement (Second) of Judgments, § 27 (1982). "An issue may be 'actually' decided even if it is not explicitly decided, for it may have constituted, logically or practically, a necessary component of the decision reached." *Dennis v. Rhode Island Hospital Trust Nat'l Bank*, 744 F.2d 893, 899 (1st Cir. 1984). It is well-established that the reach of collateral estoppel "must be confined to situations where the matter raised in the second suit is identical in all respects with that decided in the first proceeding." *CIR v. Sunnen*, 333 U.S. 591, 599–600, 68 S.Ct. 715, 92 L.Ed. 898 (1948).

The United States Court of Appeals for the First Circuit has held that a party seeking to estop the litigation of an issue by reference to a previous adjudication between the parties must establish: (1) an identity of issues, (2) actuality of litigation, (3) finality of the earlier resolution, and (4) the centrality of the adjudication (meaning that the determination of the issue in the prior proceeding was essential to the final judgment or order). *Faigin*, 184 F.3d at 78. The Court must examine now Plaintiffs' arguments in light of these required elements.

### 1. Mutuality of Parties

■■■ Before determining whether Plaintiffs have established the aforesaid criteria for the application of offensive collateral estoppel, the Court must consider the threshold issue of whether collateral estoppel may apply in an instance where the second lawsuit involves different plaintiffs from the prior adjudication. Originally, the scope of collateral estoppel was limited by the doctrine of mutuality of parties. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326–327, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). The United States Supreme Court stated that collateral estoppel has the dual purpose of protecting litigants from the burden of re-litigating an identical issue with the same party or his privy, and of promoting judicial economy by preventing unnecessary litigation. *See Blonder–Tongue Labs., Inc. v. University of Illinois Foundation*, 402 U.S. 313, 328–329, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971). Under the rationale that it was unfair to allow a party to use a prior judgment when he himself would not be so bound, the mutuality requirement gave a litigant who had lost in a previous lawsuit the opportunity to re-litigate identical issues with new parties. *Parklane Hosiery Co.*, 439 U.S. at 326–327, 99 S.Ct. 645.

However, in *NLRB v. Donna–Lee Sportswear Co.*, the First Circuit noted that the United States Supreme Court has endorsed a trend in the law allowing, in certain circumstances, collateral estoppel to be asserted by parties who were not present in the initial lawsuit. 836 F.2d 31, 35, n. 4 (1st Cir.1987), *citing Parklane Hosiery Co.*, 439 U.S. at 322, 99 S.Ct. 645 (holding that a defendant in stockholders'

class action suit was precluded from re-litigating issues decided against it in an earlier action brought by the United States Securities and Exchange Commission); *Blonder–Tongue Labs., Inc.,* 402 U.S. at 313, 91 S.Ct. 1434 (holding that the invalidity of patent determined in prior lawsuit may preclude assertion of patent validity in later infringement suit brought against a different defendant). In these two cases, the United States Supreme Court abandoned the mutuality requirement in recognition of the obvious difference in position between a party who has never litigated an issue and one who has fully litigated an issue and lost. *See Parklane Hosiery Co.,* 439 U.S. at 327, 99 S.Ct. 645.

■ The Supreme Court decided that the best approach for dealing with the issue of offensive collateral estoppel in federal courts is to grant trial courts broad discretion to determine when the doctrine should be applied. *Parklane Hosiery Co.,* 439 U.S. at 331, 99 S.Ct. 645. The general rule is that district courts should not permit offensive collateral estoppel in cases where a plaintiff could easily have joined in the earlier action, or where the application of offensive estoppel would be unfair to a defendant. *Id.*

Here, Carlos Romero was the plaintiff in the prior adjudication, and the current Plaintiffs were not named parties in the earlier litigation. It is not clear whether Plaintiffs could have joined in the earlier suit, as the date of the commencement of their membership in the Colegio has not been conclusively established. If Plaintiffs were not members of the Colegio at the time the Romero action was filed, they could not have joined as plaintiffs to the first lawsuit.

The Court is not aware of any reason why applying non-mutual offensive collateral estoppel to the instant action would not be fair to the Colegio. Specifically, the Colegio had every incentive to vigorously defend the first litigation, given that future suits by other members could have been foreseeable. *See Parklane Hosiery Co.,* 439 U.S. at 330, 99 S.Ct. 645. The judgment relied upon by Plaintiffs is not inconsistent with any previous judgments in favor of the Colegio. *See id.* Finally, the instant litigation does not afford the Colegio procedural opportunities that were unavailable in the first action that could readily cause a different result. *See id.* As such, the Court exercises its discretion to determine that non-mutual offensive collateral estoppel may be applied in this case. The Court must now determine whether Plaintiffs have met their burden of establishing the four criteria required by *Faigin, supra,* 184 F.3d at 78.

## 2. Identity of Issues

■ The first element that Plaintiffs must prove in order to prevail on their summary judgment motion is that the issues adjudicated in the Romero litigation are the same as those at issue in the instant action. *See Faigin,* 184 F.3d at 78. The Court agrees with Plaintiffs that the issue at stake here—the unconstitutionality of the Colegio's compulsory life insurance program—is identical to the central issue at stake in the Romero litigation. In the earlier litigation, Romero, a member of the Colegio, argued that the compulsory life insurance program was not germane to the purposes that justify the Colegio, an integrated bar association, and thus violated his First Amendment rights. Plaintiffs in the instant action are also members of the Colegio who have been required to pay a portion of their dues toward a mandatory life insurance policy. Despite the outcome of Romero, the Colegio continued to allocate a portion of the members' dues toward a life insurance program. Because the same allocation of bar association dues

toward mandatory life insurance is at stake in both lawsuits, the Court holds that Plaintiffs have met the identity of issues requirement.

### 3. Actuality of Litigation

■ The second element requires Plaintiffs to demonstrate that the issue at stake in the instant litigation was actually litigated in the earlier proceeding. *See Faigin,* 184 F.3d at 78. As stated above, the central issue in both lawsuits is the constitutionality of the compulsory life insurance program for members of the Colegio.

The Court finds that this exact issue was extensively briefed and litigated before this Court, and again before the First Circuit, where an oral argument was held on this issue. The First Circuit held that the non-ideological activities of an integrated bar association were subject to the First Amendment's germaneness requirement. *Romero, Jr. v. Colegio de Abogados de Puerto Rico,* 204 F.3d 291, 296–303 (1st Cir.2000). On remand, this Court certified the following question to the Puerto Rico Supreme Court: "Is [the Colegio] authorized to compel members to purchase life insurance coverage through the Colegio as a condition of membership in the bar of Puerto Rico?" *Romero, Jr. v. Colegio de Abogados de Puerto Rico,* Civ. No. 94–2503(PBS), No. 71. In response, the Puerto Rico Supreme Court stated that, under Puerto Rico law, the Colegio was authorized to compel its members to pay for life insurance from their annual dues. *See Carlos Romero, hijo v. Colegio de Abogados de Puerto Rico,* 2001 J.T.S. 89, 2001 WL 670083 (P.R. June 12, 2001). Back before this Court, Plaintiff Romero moved for summary judgment, which was briefed and orally argued by both parties. *Romero, Jr.,* Civ. No. 94–2503(PBS), Nos. 93, 98, and 109. The Court then ruled that the Colegio's mandatory life insurance pro-

gram was not germane to the purposes justifying an integrated bar association, and therefore the program violated Plaintiff Romero's constitutional rights. *Id.* at No. 113. The Colegio initiated an appeal of the Court's decision, but later voluntarily dismissed its appeal, thereby rendering this Court's decision as final. As such, there is no question that the issue of the constitutionality of the mandatory life insurance program was actually litigated in the earlier lawsuit.

### 4. Finality of the Earlier Adjudication

■ The third element for collateral estoppel requires Plaintiffs to demonstrate that the issue was determined by a valid and binding final judgment or order. *See Faigin,* 184 F.3d at 78. As stated above, the issue of the constitutionality of the Colegio's compulsory life insurance program was considered by this Court, the Puerto Rico Supreme Court, and the First Circuit. After eight years of active litigation, the Colegio abandoned its appeal, thereby rendering this Court's summary judgment decision in favor of Plaintiff Romero as the final and binding judgment. Thus, Plaintiffs clearly meet the finality element required for the application of non-mutual offensive collateral estoppel.

### 5. Centrality of the Adjudication

■ Finally, the Court must consider whether the determination of the issue in the prior proceeding was essential to the final judgment. *See Faigin,* 184 F.3d at 78. To reach its decision on the constitutionality of the compulsory life insurance program, the Court determined that the program was not germane to the purposes of an integrated bar association. Accordingly, because this Court found that the Colegio had violated Plaintiff Romero's constitutional rights as a result of the compulsory life insurance program, the Court ordered the Colegio to refund the portion

of Plaintiff Romero's dues that has been used to purchase the mandatory life insurance since 1993. Therefore, the Court's decision regarding the germaneness of the life insurance program and the consequent violation of Plaintiff Romero's rights was essential to the remedy that was mandated. The Court therefore holds that Plaintiffs met the fourth and final requirement of the test set forth by *Faigin, supra.*

The Court thus finds that the Colegio "received a full and fair opportunity to litigate their claims" in the first litigation. *See Acevedo–Garcia v. Monroig,* 351 F.3d 547, 575 (1st Cir.2003), citing *Parklane Hosiery,* 439 U.S. at 332, 99 S.Ct. 645. Plaintiffs have demonstrated that no genuine issue of material fact exists as to whether the doctrine of non-mutual offensive collateral estoppel applies to this action. The entry of summary judgment in Plaintiffs' favor is thereby warranted.

### B. *Remedies*

Having granted Plaintiffs' motion for summary judgment, the Court will briefly address the Colegio's opposition[3] to two of the remedies sought by Plaintiffs: declaratory judgment and permanent injunctive relief.[4]

### 1. Declaratory Judgment

In their amended complaint and subsequent motion for summary judgment, Plaintiffs move the Court to enter a declaratory judgment stating that the Colegio's mandatory life insurance program is unconstitutional, as it is not germane to the purposes that justify an integrated bar association. Further, Plaintiffs seek a declaratory judgment preventing the Colegio

from allocation a portion of its members' dues for the mandatory life insurance program. The Declaratory Judgment Act states, in pertinent part:

> In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such. 28 U.S.C. § 2201 (1988).

The United States Supreme Court has held that declaratory relief is discretionary. *El Día, Inc. v. Hernández Colón,* 963 F.2d 488, 493 (1st Cir.1992), internal citations omitted. A district court must first determine that the constitutional prerequisites of jurisdiction and justiciability have been satisfied before considering the totality of the circumstances. *Id.* at 494. The First Circuit has held that when deciding whether to enter a declaratory judgment, courts must always consider "the need ... to be chary about adjudicating constitutional rights by means of declaratory judgment actions. Uncertain questions of constitutional law should be addressed only when absolutely necessary." *Id.*

Here, the Court is satisfied that the threshold questions of jurisdiction and justiciability have been met. Although the Colegio argues that there is no actual case and controversy because the Colegio voluntarily discontinued the life insurance program, the Court disagrees. This issue was fully discussed in the Court's Opinion

---

**3.** The Court notes that the majority of the Colegio's brief is dedicated to arguing why these two remedies are not available to Plaintiffs, rather than addressing the merits of Plaintiffs' collateral estoppel argument.

**4.** Plaintiffs also request the return of the portion of the Colegio's members' dues that were allocated to the life insurance benefit since the entry of the Romero decision in 2002, as well as attorneys' fees and costs.

and Order on Defendant's motion to dismiss. *See* No. 62. In its opposition to Plaintiffs' motion for summary judgment, the Colegio has not set forth any further evidence that the life insurance program has been permanently discontinued. In fact, Plaintiffs informed the Court (No. 76) that the Colegio has not reduced its members' fees to account for the elimination of the life insurance program. Rather, Plaintiffs informed the Court that the Colegio has instituted a trust in order to provide the same life insurance benefit that purportedly had been discontinued.

The constitutional question of whether the life insurance program was germane to the purposes of an integrated bar association was already thoroughly addressed in the earlier Romero litigation. Therefore, the Court is not concerned that the entry of a declaratory judgment will prematurely resolve a constitutional question before it can be completely adjudicated. See *El Día,* 963 F.2d at 494. However, in light of the discussion of permanent injunctive relief below, the Court does not find it necessary to enter a declaratory judgment on Plaintiffs' behalf. The Court holds that the granting of permanent injunctive relief, along with the award of monetary damages, serves the purpose of fairly compensating Plaintiffs while preventing the Colegio from engaging in the unconstitutional practice of allocating its members' dues to a non-germane compulsory life insurance program.

### 2. Permanent Injunctive Relief

Plaintiffs also move the Court to permanently enjoin the Colegio from charging its members any amount for the purchase of life insurance from their annual dues. In order for a permanent injunction to be entered, Plaintiffs must meet the following four requirements: (1) a showing of actual success on the merits; (2) that Plaintiffs would be irreparably injured in the absence of injunctive relief; (3) that the harm to Plaintiffs from the Colegio's conduct would exceed the harm to the Colegio accruing from the issuance of an injunction; and (4) that the public interest would not be adversely affected by an injunction. *Esso Std. Oil Co. (P.R.) v. López Freytes,* 467 F.Supp.2d 156, 168 (D.P.R.2006). It is well-established that the decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court. *See eBay Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006).

The Colegio loosely argues that Plaintiffs do not meet the four requirements set forth above. The Court disagrees. Given that Plaintiffs have prevailed on the merits in their summary judgment motion, Plaintiffs have clearly established the first element. In the absence of injunctive relief, Plaintiffs may be further subjected to irreparable harm through an allocation of their membership dues toward a non-germane and therefore unconstitutional life insurance program. Given that the Colegio claims that the money allocated toward the life insurance program is for the benefit of its members only, the Colegio will not be harmed by the entry of a permanent injunction. Finally, the public interest will not be adversely affected by the entry of an injunction prohibiting the Colegio from collecting compulsory life insurance payments from Plaintiffs, who are members of the Colegio. In further support of the entry of a permanent injunction in the instant action, the Court notes that a permanent injunction was entered by this Court on the same issue in the Romero litigation. Therefore, the Court finds that permanent injunctive relief is appropriate in this matter.

## IV. *CONCLUSION*

In conclusion, the Court grants Plaintiffs' motion for summary judgment. In so doing, the Court holds that Plaintiffs are entitled to: (1) the entry of a permanent injunction, (2) damages to compensate the members of the Colegio whose dues were allocated to the compulsory life insurance program from the entry of the Romero decision in 2002 until the present, and (3) interest, attorneys' fees and costs. The Court will enter a separate judgment accordingly.

Further, it is hereby **ORDERED** that **on or before October 17, 2008,** Plaintiffs **SHALL** file an informative motion detailing the monetary amount of membership dues that was allocated to the compulsory life insurance program between the entry of judgment in the Romero litigation in 2002 and the present. **Also on or before October 17, 2008,** Plaintiffs **SHALL** file an informative motion detailing their costs and attorneys' fees. The Colegio **MAY** oppose these motions **on or before October 31, 2008;** said opposition **SHALL** contain the necessary financial documentation to support the Colegio's opposition.

**IT IS SO ORDERED.**